Lywanna COOPER, Plaintiff,

v.

CITY OF NORTH OLMSTED, et al., Defendants.

Civ. A. No. C82–3089.

United States District Court, N.D. Ohio, E.D.

Dec. 29, 1983.

Steven L. Howland, Cleveland, Ohio, for plaintiff.

James M. Dubelko, Asst. Dir. of Law, North Olmsted, Ohio, for defendants.

## MEMORANDUM AND ORDER

### ANN ALDRICH, District Judge.

In this race and sex discrimination case, Lywanna Cooper contends that she was wrongfully terminated from her job as a bus driver. She has unsuccessfully raised her allegations of discrimination in various administrative and state court proceedings. Defendants contend that the application of preclusion doctrines to employment discrimination cases in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) makes a Motion for Summary Judgment appropriate here. This Court disagrees and denies the motion.

Cooper's complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983,

and the Thirteenth and Fourteenth Amendments to the Constitution.[1] Jurisdiction is invoked under the federal question and civil rights provisions, 28 U.S.C. §§ 1331 and 1343, and also under the declaratory judgment provisions, 28 U.S.C. §§ 2201 and 2202.

## FACTS

Lywanna Cooper was employed by the North Olmsted Municipal Bus Line from July 2, 1979 until June 19, 1980. She was the only black female bus operator employed by the bus system. Cooper was employed on a probationary status and could be terminated within one year if she failed to work satisfactorily. Ohio Rev. Code § 124.27.

Cooper committed numerous infractions of the bus system's rules and regulations during her term of employment. In a letter of June 2, 1980, the general manager, Kenneth Mues, issued a reprimand based on the following incidents:

"1) August 29, 1979—warned about parking the coach on Lorain Road while passengers were on board.

2) October 5, 1979—advised that you were wearing non-regulation shoes which did not comply to rules regarding proper uniform.

3) October 9, 1979—miss.

4) October 15, 1979—failed to make a relief at the proper place, had to be found and taken to the proper relief point.

5) October 22, 1979—advised that it is improper operation to have a foot propped on the emergency brake handle while driving a coach.

6) October 29, 1979—failed to make a relief at the proper place, had to be found and taken to the proper relief point.

---

1. No direct private right of action exists under either the Thirteenth Amendment, *Alma Society v. Mellon*, 601 F.2d 1225, 1237 (2d Cir.1979); *Vietnamese Fishermen's Association v. Knights of the Ku Klux Klan*, 518 F.Supp. 993 (S.D.Tex. 1981) or the Fourteenth Amendment. *Rogin v.*

*Bensalem Township*, 616 F.2d 680, 686–87 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Terrace Knolls, Inc. v. Dalton, Dalton, Little and Newport, Inc.*, 571 F.Supp. 1086, 1090 (N.D.Ohio 1983).

7) February 26, 1980—miss.

8) March 14, 1980—failed to allow passengers to board coach at lay over point.

9) April 9, 1980—observed by another operator leaving the County Line ahead of schedule, later observed by a supervisor still ahead of schedule.

10) April 18, 1980—miss.

11) May 7, 1980—running ahead of schedule.

12) May 9, 1980—running ahead of schedule."

Mues also discussed a May 28, 1980 incident in which Cooper failed to report for work at the designated relief point and failed to report her location and the reason for her absence to the dispatcher.

Later in June of 1980, Cooper committed two more violations. On June 12 she failed to arrive on schedule at the Garnett School in North Olmsted, stranding children there for approximately thirty minutes, and on June 19 she left her bus parked, unattended and open—with the engine running—on Dover Center Road in North Olmsted.

Later on June 19, Mues wrote a letter firing Cooper. He concluded: "Your inefficiency, incompetence, and unwillingness to render satisfactory service as an employee of the North Olmsted Municipal Bus Line make it necessary for your employment to be terminated."

### PROCEDURAL HISTORY

On February 15, 1980, while still employed by the bus system, Cooper filed a complaint with the Ohio Civil Rights Commission ("OCRC"), Northeast Regional Office, alleging that she was the victim of unlawful employment practices. After being fired, she filed another complaint, dated June 25, 1980, alleging that race and sex discrimination had been practiced against her. OCRC investigated the allegations, found no evidence supporting the charges, and dismissed the action on October 10, 1981. Cooper did not seek reconsideration within the ten days allowed by statute.

On June 25, 1980, Cooper filed the same allegations with the Cleveland District Office of the Equal Employment Opportunity Commission ("EEOC"). On August 9, the district director ruled that "there is not reasonable cause to believe that the charge is true." Pursuant to the statute and regulations, he issued Cooper a right-to-sue letter.

Simultaneous with the EEOC action, Cooper filed a June 27, 1980 claim for unemployment benefits with the Ohio Bureau of Employment Services ("OBES"). On July 25, OBES denied the claim because the discharge was "for just cause in connection with the work." Cooper commenced a series of fruitless administrative appeals: (1) a reconsideration, denied by the OBES Administrator on August 27, 1980; (2) an appeal to the OBES Board of Review, denied on October 2, 1980 after a hearing; and (3) an application for reconsideration, dismissed by the board on November 5, 1980.

The last stop on Cooper's journey through the Ohio agency and court system was an appeal of the final administrative decision to the Cuyahoga County Court of Common Pleas, filed on November 26, 1980. The court reviewed the prior records and transcripts and affirmed the OBES decision, finding on December 30, 1982

... that the Referee's decision affirming the Administrator's determination that the claimant was discharged for just cause in connection with work and that the disqualification, for benefits ... was properly imposed, was reasonable, lawful, and supported by the manifest weight of the evidence.

Cooper was ordered to pay the costs of the action. She did not appeal.

### LAW

██ The defendants contend that the determinations by OBES and the state courts that Cooper was terminated for "just cause" should bar this action under the doctrines of res judicata and collateral estoppel. Under the full faith and credit statute, 28 U.S.C. § 1738, the federal courts are bound to give preclusive effect

to state court judgments. The statute provides, in part:

> The ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law ₃ or usage in the courts of such State....[2]

■ The Supreme Court, on several recent occasions, has reaffirmed the appropriateness of applying preclusion rules to bar relitigation of civil rights claims. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), a § 1983 case, the Court wrote:

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.... As this Court and other courts have recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication....

*Id.* at 94, 101 S.Ct. at 414 (citations omitted).

*Kremer v. Chemical Construction Corporation, supra,* extended *Allen v. McCurry* to employment discrimination cases. Kremer, a Jew who emigrated from Poland in 1970, filed a complaint with the EEOC alleging that his discharge and failure to be rehired was due to his national origin and religion. Pursuant to the requirements of Title VII, the EEOC referred the complaint to the relevant New York agency, the Division of Human Rights. Its investigation found no probable cause to believe that the employer had discriminated against Kremer, and the Appeal Board affirmed. Kremer then filed a petition with a panel of New York's intermediate appellate court, which unanimously affirmed the decision.

Kremer did not appeal to New York's highest court, but instead returned to the EEOC, which also found no probable cause to believe the discrimination charge was true. The District Director refused a request for reconsideration. Armed with a right-to-sue letter, Kremer commenced a federal court suit. The district court dismissed the action because of res judicata and the Second Circuit affirmed.

The Supreme Court also affirmed. Justice White rejected contentions that Title VII repealed section 1738 by implication, finding that "neither the statutory language nor the Congressional debates suffice to repeal § 1738's long-standing directive to federal courts." 102 S.Ct. at 1894. As a matter of policy, the Court held that "[d]epriving state judgments of finality not only would violate basic tenets of comity and federalism, ... but also would reduce the incentive for states to work towards effective and meaningful discrimination systems." *Id.* at 1896. Finally, it ruled that the state agency and courts had considered all the discrimination claims that a federal court would have heard, and had done so in a manner that accorded Kremer due process. *Id.* at 1899.

This case is different. Unlike Kremer, Cooper did not file administrative and judicial appeals of the ruling by the state anti-discrimination agency, the OCRC. Her failure to seek reconsideration of the negative OCRC decision indicates that she filed a claim there only to satisfy the jurisdictional prerequisites to bringing an action with the EEOC under 42 U.S.C. § 2000e–5.

Instead, Cooper's appeals concerned the OBES decision that she was discharged from her job for "just cause". Although Cooper raised the issues of race and sex discrimination during the OBES and Court of Common Pleas proceedings, there is no indication that her charges were investigated. While the New York agency in *Kremer* and OCRC here have a statutory duty to investigate claims of discrimination,

---

**2.** Res judicata is also properly applied to decisions of an administrative agency acting in a "judicial capacity". *United States v. Utah Con-* *struction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

OBES's responsibility was simply to determine whether Cooper had been discharged for "just cause". Ohio Rev.Code § 4141.29(D)(2)(a). The OBES Board of Review and the Court of Common Pleas also eschewed the question of discrimination. The court merely held that the denial of benefits to Cooper was not "unlawful, unreasonable or against the manifest weight of the evidence"—the standard of review set forth in Ohio Rev.Code § 4141.28(O). These findings "would not negate the possibility that race or retaliation may have also played a role in that decision". *Goldsmith v. DuPont Co.*, 571 F.Supp. 235, 32 FEP 1879, 1882 (D.Del.1983).

Since there was no determination in the fully-litigated state proceedings as to whether race, sex, or retaliation played a role in Cooper's discharge, the prior hearings did not constitute the "full and fair opportunity to litigate the merits" of her Title VII and § 1981 claims required by *Kremer*, 102 S.Ct. at 1899, and she is not estopped from raising those claims in a *de novo* proceeding before this Court. The Motion for Summary Judgment based on res judicata and collateral estoppel is denied, without prejudice to defendant's right to file a separate Motion for Summary Judgment based on the record now before the Court.

IT IS SO ORDERED.