**Lywanna COOPER, Plaintiff-Appellee,**

v.

**CITY OF NORTH OLMSTED, et al.,
Defendants-Appellants.**

No. 85–3213.

United States Court of Appeals,
Sixth Circuit.

Argued May 5, 1986.

Decided July 16, 1986.

Michael R. Gareau (argued), Director of Law, James M. Dubelko (argued), Asst. Director of Law, City of North Olmsted, North Olmsted, Ohio, for defendants-appellants.

Steven L. Howland (argued), Cleveland, Ohio, for plaintiff-appellee.

Susan Elizabeth Rees (argued), E.E.O.C., Washington, D.C., for amicus curiae.

Before KENNEDY and MILBURN, Circuit Judges, and JOINER, Senior District Judge.[*]

JOINER, Senior District Judge.

This is an appeal by the City of North Olmsted, *et al.* ("the City" "or defendant") from the judgment of the district court in favor of plaintiff-appellee Lywanna Cooper ("Cooper" or "plaintiff") on her Title VII and § 1981 claims. The City raises two major issues before this court. First, the City challenges the district court's conclusion that plaintiff was not collaterally estopped in this suit by a prior administrative decision denying her unemployment compensation, when the administrative decision was affirmed by a state court. Second, the City argues that the district court incorrectly analyzed plaintiff's allegations of disparate treatment and retaliatory discharge.

Lywanna Cooper is the first female and first black to be hired as a bus driver by the North Olmsted Municipal Bus Line ("NOMBL"). Cooper began a one year period of probationary employment on July 1, 1979. Six to eight weeks later, she complained of harassment by her fellow bus drivers. This harassment included racist remarks made in Cooper's presence, offensive touching of her body, and crude bathroom graffiti about her. In response to Cooper's complaints, NOMBL repainted the bathroom and posted a notice indicating that discrimination would not be tolerated. No one was disciplined, however, and the harassment did not stop.

NOMBL maintained a "deficiency book" in which rules violations committed by bus drivers were recorded. During 1979, six violations by Cooper were entered in the book. On August 29, 1979, Cooper received a warning about parking her bus on Lorain Road with passengers on board. On October 5, 1979, plaintiff was cited for wearing non-regulation shoes that were too bright in color. On October 9, 1979, a

[*] The Hon. Charles W. Joiner, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

"miss," or failure to arrive at work on time without first informing NOMBL, was recorded. On October 15, 1979, Cooper was cited for failing to relieve another driver at the proper place. On October 22, 1979, plaintiff was informed that she should not drive the bus with her foot propped over the emergency brake handle. On October 29, 1979, Cooper again was cited for failing to relieve another driver at the correct place.

Cooper filed a complaint with the Ohio Civil Rights Commission ("OCRC") on February 15, 1980, claiming harassment by the other NOMBL drivers. She alleged that the drivers' bathroom was again covered with graffiti about her, and that the other drivers were making bets about which of them could force her into an accident. In March, 1980, Cooper, NOMBL, the OCRC, and the Equal Employment Opportunity Commission ("EEOC") entered into a negotiated settlement agreement. The agreement required the repainting of the bathroom walls, the posting of a policy statement, and the disciplining of anyone caught engaging in discriminatory behavior. Cooper reported some improvement in her work situation following the agreement.

On February 26, 1980, one day after NOMBL received notice of Cooper's OCRC complaint, Cooper was cited for a miss. On March 14, 1980, a deficiency book entry indicates that plaintiff failed to pick up passengers at a certain point. On April 9, 1980, and on May 7 and May 9, 1980, Cooper was cited for running early. She was charged with a miss on both April 18 and May 28, 1980. On June 12, 1980, Cooper was cited for failing to pick up children at a school stop, leaving them stranded for one half hour. On June 19, 1980, Cooper was charged with leaving her bus unattended, running and open on a public street, arguably with children milling around.

NOMBL General Manager Ken Mues sent Cooper warning letters on June 2, and again on June 13, 1980. These letters were Cooper's first indication that deficiency book entries were being made about her, and that her job performance was being seriously questioned. On June 19, 1980, Mues learned of the charge that Cooper had left her bus unattended, with children milling around it. He decided to discharge Cooper immediately, and did so.

After being discharged, Cooper pursued a number of avenues for relief. First, on June 25, 1980, she filed charges of unlawful employment practices against the City with the OCRC. After an investigation, the OCRC found no cause to credit Cooper's allegations, and dismissed the charges. She did not request a reconsideration of this decision. Cooper also filed charges with the EEOC, which concluded, on June 9, 1980, that there was no cause to believe that Cooper's allegations were true. The EEOC issued Cooper a right to sue letter, enabling her to bring the present action.

Finally, on June 27, 1980, Cooper filed for unemployment benefits with the Ohio Bureau of Employment Services ("OBES"). She argued that she was entitled to benefits because her discharge was without just cause. On July 25, 1980, the OBES denied Cooper benefits on the ground that NOMBL had cause to fire her. Cooper appealed this decision to the OBES Board of Review, which also found against her. On November 26, 1980, Cooper further appealed to the Cuyahoga County Court of Common Pleas. The court affirmed the denial of benefits, finding that the administrative determination "was properly imposed, and was reasonable, lawful and supported by the manifest weight of the evidence." *Cooper v. Board of Review*, No. 20482 (Cuyahoga Cnty.Ct.Cmmn.Pleas Dec. 30, 1982). Cooper did not appeal from this decision.

On November 8, 1982, Cooper filed the present case in the United States District Court for the Northern District of Ohio. She charged the City with violating Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Civil Rights Act of 1871, 42 U.S.C. § 1983, by discharging her because of her race and sex, and because she filed discrimination

charges with the OCRC. On September 2, 1983, the City moved for summary judgment, arguing that Cooper's claims were precluded by the prior ruling of the Cuyahoga County Court of Common Pleas. The district court denied the motion, 576 F.Supp. 592. The City then moved for summary judgment on the merits of Cooper's discrimination claims, and the court denied the motion.

After a bench trial, the district court entered judgment in favor of Cooper on her Title VII and § 1981 claims, and dismissed her claim under § 1983. The City now appeals from the judgment of the district court.

## I. PRECLUSIVE EFFECT OF THE PRIOR STATE COURT JUDGMENT

The City first argues that the district court erroneously found that the final decision of the Cuyahoga County Court of Common Pleas did not preclude the claims raised in this lawsuit. This argument is based on the Full Faith and Credit Statute, which requires all United States courts to afford the same full faith and credit to state court judgments that would apply in the state's own courts. 28 U.S.C. § 1738. In the present case, the City contends that the courts of Ohio would hold that the decision of the Court of Common Pleas precludes a subsequent discrimination claim. Therefore, the City argues, the district court should have reached the same conclusion.

The City's argument rests on the assumption that the courts of Ohio would apply the doctrine of collateral estoppel to the state court judgment, and hold that the judgment bars the present claims of discrimination. The seminal Ohio case on collateral estoppel is *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943). There the Ohio Supreme Court defined collateral estoppel as follows:

A point or a fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction may not be drawn in question in any future

action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

142 Ohio St. at 300, 52 N.E.2d 67 (syllabus ¶ 3). More recently, Justice Holmes, writing for the Ohio Supreme Court in *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200–01, 443 N.E.2d 978 (1983), stated that:

The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.

(citations omitted). Therefore, the City must prove that the issues of race and sex discrimination were actually and directly at issue in the prior state proceedings, and that they were essential to the judgment of the state court against Cooper.

■ The record in this case reveals that the question of whether Cooper's discharge was the result of race or sex discrimination by the City was not actually or directly presented to or ruled upon by the OBES or the Common Pleas Court. The prior state proceedings instead addressed Cooper's entitlement to unemployment benefits. Ohio Rev.Code § 4141.29(D)(2)(a) (Page 1980) provides that an individual is ineligible for benefits if he or she "has been discharged for just cause in connection with his [or her] work." In the present case, Cooper was denied benefits by the OBES because it found that her employer had "just cause" to discharge her. The determination of whether just cause exists focuses on the existence of fault on the part of the employee as a factor in the discharge. *See Sellers v. Board of Review, Ohio Bureau of Employment Serv.*, 1 Ohio App.3d 161, 164, 440 N.E.2d 550 (1981). Here, the

OBES concluded that Cooper's discharge was justified by her infractions of the rules of her employer. On appeal, the Common Pleas Court held that the OBES determination was not "unlawful, unreasonable, or against the manifest weight of the evidence." Ohio Rev.Code § 4141.28(O). The court rejected Cooper's arguments that her transgressions were insufficient to justify the discharge, and that the OBES hearing was unfair in that Cooper was unable to present her side of the case. The record is devoid of any consideration of race or sex discrimination, and such claims were beyond the scope of the administrative and state court actions.[1] Under these circumstances, the courts of Ohio would hold that Cooper's discrimination claims are not barred by the prior state proceedings.

The City's reliance on *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), is misplaced. In that case, the question confronting the Supreme Court was whether to "give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment claim as meritless when the state court's decision would be res judicata in the State's own courts." 456 U.S. at 463, 102 S.Ct. at 1888. The Court held that the prior state proceedings barred the plaintiff's Title VII charges of discrimination. In *Kremer*, New York law clearly held that the judicially-affirmed determination of the New York State Division of Human Rights that plaintiff was not the victim of discrimination barred later suits based on the same grievance. *Id.* at 467, 102 S.Ct. at 1890 (quoting New York law). In this case, the prior state proceedings did not encompass the claims raised in the subsequent Title VII lawsuit, and the Ohio courts would not apply collateral estoppel.[2]

The City's reliance on *Pullar v. UpJohn Health Care Serv., Inc.*, 21 Ohio App.3d 288, 488 N.E.2d 486 (1984), is also unavailing. There the Cuyahoga County Court of Appeals held that a prior OBES decision that plaintiff had been terminated for just cause bars a later age discrimination action. The discrimination suit was based on an Ohio statute that prohibits discharging individuals between the ages of 40 and 70 "without just cause." 21 Ohio App.3d at 290, 488 N.E.2d 486 (quoting Ohio Rev. Code § 4101.17). *Pullar* is distinguishable from the present case, as the subsequent discrimination suit raised the same issue of just cause to discharge as had been addressed in the OBES proceedings. In this

---

1. The district court found that Cooper raised the issues of race and sex discrimination during the OBES and Court of Common Pleas proceedings. *See Cooper v. City of North Olmsted*, 576 F.Supp. 592, 595 (N.D.Ohio 1983). The court then stated, however, that there was no indication that these allegations were ever investigated. The court further stated that the OBES Board of Review and the Court of Common Pleas had not ruled on the allegations of discrimination. 576 F.Supp. at 595–96. The record on appeal, as indicated above, contains no indication that any charges of race and sex discrimination were directly presented or considered in the state proceedings. Therefore, the record, when considered as a whole, fails to establish that the issues of race and sex discrimination were actually and directly at issue in the prior proceedings, or that they were essential to the judgment of the state court.

2. The City argues that *Kremer* establishes a two-part inquiry for this case. First, a court should decide whether or not the Ohio courts would give preclusive effect to the prior Court of Common Pleas decision, and would hold that it bars the present discrimination suit. If the court finds that collateral estoppel would apply under Ohio law, it must then examine whether that application would offend due process. Specifically, the court must determine whether the claimant had a full and fair opportunity to litigate the discrimination claim in the prior proceeding. The City claims that the district court committed reversible error by omitting the first part of the analysis, and failing to consider Ohio law. Instead, the court focused exclusively on the due process inquiry. The district court concluded that Cooper did not have a full and fair opportunity to litigate her discrimination claims in the prior proceedings, as those proceedings did not determine whether discrimination played a role in Cooper's discharge. This analysis, although faulty, is not reversible error. By concluding that the prior state proceedings did not afford Cooper an opportunity to litigate her discrimination claims, the court determined that those claims were not actually or directly at issue in the state court and that they were not essential to the state court's judgment. Thus, the determination required by Ohio law was made.

case, as previously stated, the prior OBES proceedings did not encompass the claims raised later in the discrimination action. Moreover, a number of decisions from the other Ohio courts indicate that collateral estoppel does not apply in circumstances similar to those in the present case. These courts have refused to give collateral estoppel effect to judicially-affirmed administrative decisions, holding that those decisions did not affect later proceedings addressing issues not directly raised in the first actions. *See, e.g., Ohio Dept. of Mental Health, Cambridge Mental Health Center v. Hunt,* No. CA–766 (Ohio Ct.App. Aug. 2, 1985); *Pickaway County General Health Dist. v. Administrator, Ohio Bureau of Employment Serv.,* No. 84–CA–12 (Ohio Ct.App. July 1, 1985); *Reed v. Dodge,* No. E–84–41 (Ohio Ct.App. March 15, 1985).

The foregoing analysis reveals that the courts of Ohio would not preclude Cooper from asserting her discrimination claims because of the prior judicially-affirmed OBES proceedings. The district court's refusal to apply the doctrine of collateral estoppel is affirmed.

## II. COOPER'S CLAIMS OF INTENTIONAL DISCRIMINATION

■ The City next challenges the district court's finding that plaintiff proved intentional discrimination, in violation of Title VII and § 1981.[3] The district court concluded that Cooper had established intentional discrimination under two theories: disparate treatment and retaliatory discharge. The City argues that the district court's conclusions on the issues are legally erroneous.

### A. *Disparate Treatment*

Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), generally prohibits race or sex discrimination in any employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 796, 93 S.Ct. 1817, 1821, 36 L.Ed.2d 668 (1973). A Title VII plaintiff bears the burden of proving that it is more probable than not that she was discriminated against on a proscribed basis. The district court correctly found that Cooper could establish a *prima facie* case of disparate treatment pursuant to *McDonnell Douglas* if she showed 1) that she was female and a member of a racial minority; 2) that she and a similarly situated white or male person received dissimilar treatment; and 3) that sufficient evidence exists from which the court can find a causal connection between race or sex and the alleged acts of the defendants.

The City contends that Cooper failed to establish a *prima facie* case, as she did not prove that she was treated differently than similarly situated white and male employees. It argues that the district court, in concluding that a *prima facie* case had been established, erroneously compared Cooper to employees who were not similarly situated. Specifically, the City objects to the district court's comparing of Cooper's record to those of Lawrence Sindalar and Ken Moss. The City points out that Sindalar was a permanent rather than a probationary employee during the relevant time period, and that Moss' probationary period occurred five years earlier under a different General Manager than that of Cooper.

■ A probationary period of employment permits a company to weed out or eliminate undesirable employees. *See, e.g., Farmer v. Colorado and Southern R.R. Co.,* 723 F.2d 766, 767 (10th Cir.1983). The opportunity to dismiss more readily those new employees whose job performance is unsatisfactory is particularly important to NOMBL. As a common carrier, NOMBL has the duty of exercising the highest standard of care for the safety of its passen-

---

**3.** Liability under § 1981 may be established by proving that a defendant engaged in purposeful or intentional discrimination. *See General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Leonard v. City of Frankfort Elec. and Water Plant Bd.,* 752 F.2d 189, 193 (6th Cir.1985). In the present case, the district court found that plaintiff's proof of disparate treatment and retaliatory discharge established a violation of both Title VII and § 1981. As liability under both statutes rests on the same proof, Cooper's § 1981 claim will not be separately discussed *infra.*

gers. *See, e.g., Mitchell v. Marker*, 62 F. 139, 142–43 (6th Cir.1894); *May Dept. Stores Co. v. McBride*, 124 Ohio St. 264, 178 N.E. 12 (1931). Probationary bus drivers therefore do not stand on equal footing with permanent drivers, and cannot be considered to be similarly situated. *See, e.g., McKenna v. Weinberger*, 729 F.2d 783, 789 (D.C.Cir.1984).

■ The district court improperly compared the work records of Sindalar, a permanent employee who was not discharged, and Cooper, a probationary employee who was discharged. This error requires a remanding of this case to the district court. On remand, the district court shall make findings as to whether Cooper has established that she was treated differently than other NOMBL probationary employees.

The district court also compared Cooper to Ken Moss, who began his probationary year of employment in 1976 under General Manager Ernie Zoldesy, Ken Mues' predecessor. The City contends that it presented ample evidence at trial that Zoldesy did not possess the managerial skills of Mues. It concludes that any difference in the treatment received by Cooper and Moss can be explained by the change in managers. The district court refused to consider the change in management, finding it "entirely appropriate" to compare the treatment received by Cooper and Moss. *Cooper v. City of North Olmsted*, C82–3089, at 34 (N.D.Ohio Feb. 11, 1985). Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees. *See Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 606 (8th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984). The district court therefore should have considered the management change in determining the probative value of the comparison between Cooper and Moss. On remand, the district court shall consider this factor in its analysis of Cooper's disparate treatment claim.

The City next argues that the district court erroneously conducted the analysis of discrimination claims set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). According to *Burdine*, the plaintiff must first establish a *prima facie* case of intentional discrimination, which the defendant can rebut by producing a legitimate, nondiscriminatory reason for the discharge. "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." 450 U.S. at 254–55, 101 S.Ct. at 1094 (citation and footnote omitted). If the defendant meets this burden of production, the plaintiff must then prove that defendant's asserted motive is pretextual. The need to prove pretext merges with the plaintiff's ultimate burden of persuading the court that she was the victim of intentional discrimination, a burden that the plaintiff retains at all times. *Id.* at 254–56, 101 S.Ct. at 1094–95.

In the present case, the City offered Cooper's numerous infractions of NOMBL rules, as recorded in the deficiency book, as its legitimate, nondiscriminatory reason for discharging her. Cooper then offered evidence that many of the deficiency book entries did not correspond to the facts of the situation, and that some of them were made in violation of company policy. The district court examined the deficiency book entries, one by one, and found that Cooper's version of the recorded events was credible. The court concluded that the vast majority of the deficiency book entries should not have been made, and that Cooper had therefore proved that the City's proffered reason for the discharge was a pretext.

The district court appears to have focused on whether or not the court believed Cooper's version of the facts surrounding the alleged infractions of NOMBL rules. In so doing, the district court overlooked the crucial inquiry in this case, which is whether the City intentionally discriminated against Cooper. The court should not put itself in a position of judging the

correctness of the defendant's action in discharging the plaintiff. Instead, the court should look at whether the actions and the intentions of the defendant were pretextual or amounted to intentional discrimination. To determine the City's motivation in discharging Cooper, the district court must make specific factual findings on 1) whether the City relied on the deficiency book entries in discharging Cooper; and 2) if the City did so rely, whether that reliance was reasonable under the totality of the circumstances in this case. Therefore, this case must be remanded to the district court, with instructions to make these essential factual determinations.[4]

## B. Retaliatory Discharge

■ Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), forbids discrimination against employees for attempting to protest or correct allegedly discriminatory conditions of employment. *McDonnell Douglas*, 411 U.S. at 796, 93 S.Ct. at 1821. To support a claim of retaliatory discharge, a plaintiff must prove: 1) that she engaged in activity protected by Title VII; 2) that she was the subject of adverse employment action; and 3) that there is a causal link between her protected activity and the adverse action of her employer. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir.1984). The City contends that Cooper failed to establish a *prima facie* case of retaliatory discharge, as she did not prove a causal link between her filing of OCRC charges and her discharge four months later.

The district court found that Cooper filed discrimination charges with the OCRC on February 15, 1980, and that the City received a copy of the charges on February 25, 1980. The court stated that Cooper was then "immediately cited for myriad alleged violations of NOMBL rules," and that those citations culminated in Cooper's discharge. *Cooper v. City of North Olsted*, No. C82–3089, at 35–36. From this, the district court concluded that plaintiff established a *prima facie* case of retaliatory discharge.

■ The district court's factual findings do not support its conclusion that Cooper established a causal link between the OCRC complaint and her discharge. The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation. *See, e.g., Brown v. ASD Computing Center*, 519 F.Supp. 1096, 1116–17 (S.D.Ohio 1981), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir.1983). The district court appears to have relied on the fact that Cooper was cited for rules violations six times in the seven month period preceding her OCRC complaint, and nine times in the four months following the complaint. The district court further noted that four of the pre-complaint citations were unjustified.[5] The record in this case contains no evidence directly linking the nine citations at issue to Cooper's filing of the OCRC discrimination charges. While a disparity in the amount of disciplinary action may certainly be sufficient in appropriate cases to support an inference of retaliation, this is not such a case. Standing alone, the change in the number of deficiency book entries on which the City could reasonably rely, and Cooper's discharge

---

**4.** The City also claims that the district court erred in refusing to grant it summary judgment on plaintiff's claims of intentional discrimination, as no issues of material fact existed. As the Ninth Circuit has stated, "[c]ourts are reluctant to dismiss by summary judgment Title VII discrimination suits where, as in antitrust actions, motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers." *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir.1980). In the present case, conflicting evidence was presented about the reasons for plaintiff's discharge. Summary

judgment was therefore inappropriate, and the district court properly denied the motion.

**5.** As stated earlier, the district court should have focused on whether the City reasonably relied on the deficiency book entries, and not on whether the district court itself believed the citations. The court will assume, in analyzing the retaliatory discharge claim, that the district court found or will find on remand that the City did not reasonably rely on four pre-complaint deficiency book entries and nine post-complaint deficiency book entries.

four months later, do not establish a *prima facie* case of retaliatory discharge. The district court's finding on this issue is clearly erroneous, and must be reversed.[6]

## III. CONCLUSION

The judgment of the district court denying collateral estoppel effect to the prior judicially-affirmed OBES proceedings is affirmed. The district court's finding of disparate treatment, in violation of 42 U.S.C. §§ 1981, 2000e–2(a)(1), is vacated, and the case is remanded for further proceedings in conformance with this opinion. The finding of retaliatory discharge, in violation of 42 U.S.C. §§ 1981, 2000–3(a), is reversed.

---

**6.** This decision makes it unnecessary to consider the City's claim that the district court errone-ously denied its motion for summary judgment on Cooper's retaliatory discharge claim.