**Gregory McDANIEL, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

**No. C85-693.**

United States District Court, N.D. Ohio, E.D.

Feb. 24, 1988.

Alan Belkin, Cleveland, Ohio, for plaintiff.

Linda Hauserman Harrold, Cleveland, Ohio, Frank C. Morris, Jr., Washington, D.C., for defendant.

## ORDER

WHITE, District Judge.

According to the Second Amended Complaint the plaintiff was employed by defendant as a sales representative. Two white males having less sales experience than plaintiff were hired as Senior Sales Representatives, a higher position than plaintiff's. Plaintiff was assigned accounts with little potential for meeting the goal established by defendant. The two previously mentioned Senior Sales Representatives were not assigned such accounts. Plaintiff was also required to complete additional reports and documentation which impeded his progress, his sales territory was raided by sales representatives from another unit and he was denied employment opportunities, was harassed and otherwise discriminated against because of his race. On June 26, 1984 plaintiff filed a written charge with the Equal Employment Opportunity Commission (EEOC). A second charge was filed on September 5, 1984 claiming that defendant retaliated against plaintiff for filing his initial charge of discrimination and further discriminated against plaintiff because of his race by giving plaintiff a verbal warning stage for insubordination and a verbal warning stage for poor performance and by threatening plaintiff with impending termination. Count Three of the Complaint alleges that plaintiff's employment was terminated in retaliation for filing a charge on September 5, 1984. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq and the Civil Rights Act of 1870, 42 U.S.C. § 1981. The matter is before the Court upon defendant's motion for summary judgment.

The defendant contends that summary judgment should be granted because it is clear from undisputed facts that plaintiff cannot establish a prima facie case of race discrimination or retaliation nor is there any evidence that defendant's legitimate business reasons for terminating plaintiff were pretextual.

In a disparate treatment case under Title VII and § 1981 the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The United States Supreme Court in *Burdine* summarized the test used to determine a Title VII action.

"In *McDonell Douglas Corp. v. Green*, (citations omitted), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection". Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." 450 U.S. at 253, 101 S.Ct. at 1093.

Plaintiff can establish a prima facie case of discrimination if he can show that he was a member of a racial minority, that he and a similarly situated white person received dissimilar treatment and that sufficient evidence exists from which the Court can find a causal connection between race and the acts of the defendant. *Cooper v. City of*

*North Olmsted,* 795 F.2d 1265 (6th Cir. 1986), *Potter v. Goodwill Industries of Cleveland,* 518 F.2d 864 (6th Cir.1975). *McDonnell Douglas* also sets forth elements to prove a prima facie case of discrimination. These are: plaintiff is a member of racial minority, he was qualified for his position, plaintiff was discharged and after the discharge the employer hired a white person to do plaintiff's job. The plaintiff may establish liability under § 1981 by proving purposeful or intentional discrimination by defendant. Liability under Title VII and § 1981 depends on the same proof. *Cooper v. City of North Olmsted,* 795 F.2d at 1270 n. 3. As in *Cooper,* plaintiff's Title VII and § 1981 claims will be discussed together.

Defendant argues that plaintiff cannot demonstrate that he was treated differently than similarly situated white employees and thus cannot establish a prima facie case of racial discrimination.

 Plaintiff's first allegation is that he was hired as a Sales Representative II while two white males, Cleverly and Albert, with less experience were hired as Sales Representative III, a higher position. However, evidence before the Court shows that the two white males in question had more sales related experience as well as supervisory experience, of which plaintiff had none. The position of Sales Representative III requires certain supervisory duties. Plaintiff states that he was told by Company officials Cecil Dye and George Trudeau that the company did not hire persons for the position of Senior Sales Representative. George Trudeau stated in a letter to plaintiff the importance of earning this position rather than being appointed. Examination of Trudeau's letter shows that he did not say that one cannot be hired as Senior Sales Representative, only that it is better to earn the job. Furthermore, plaintiff sent a memo to his supervisor concerning Trudeau's letter saying he was told that the company would not hire anybody as a Senior Sales Representative who had less than 12–15 years in Data Processing and that Cecil Dye agreed. One of the two white males had been in data process-

ing for the required time and the other had supervisory experience. The Trudeau letter and plaintiff's affidavit do not raise a genuine issue of material fact. Since plaintiff was less experienced than the two white males he has compared himself to he has not shown that he was similarly situated to them and his arguments as to this hiring issue have no merit.

 Plaintiff believed that he was not assigned accounts with the same potential as the mentioned two white males. However, as Senior Sales Representatives these men had higher sales quotas to satisfy and were given different types of accounts. The Sales Representatives II position received different types of accounts than the Senior Sales Representative position. Plaintiff was not singled out. Again the white males were not similarly situated to plaintiff.

. Plaintiff also complained that he was required to complete additional reports that hindered his progress which Cleverly and Albert were not required to do. Sales Representatives performing below par were required to do extra paperwork. Plaintiff sales were far below his quota. He testified on deposition that he did not know the status of Cleverly and Albert's performance. They would not have to do the additional paperwork if they were performing adequately. A White employee and a Hispanic employee were required to do the same type of paperwork when they performed below par. The white employee was later terminated for poor sales.

 In his affidavit, the plaintiff asserts that Kurt Dangerfield and Allen Brinegar, two white salesmen raided his accounts. Allen Brinegar requested sales for Brodhead–Garrett Corporation and Kurt Dangerfield sold equipment to the East Cleveland City Schools. Plaintiff was not given credit for these sales.

When plaintiff informed the Company he was told the company would look into it. The company has two types of accounts. Those specifically assigned and accounts located in a specific geographical area.

The East Cleveland Schools account belonged to Dangerfield.

The Brodhead–Garrett Company contacted Brinegar on the same day that plaintiff called that company. Although Brinegar gave a quote to the company no sale was made. The company agreed to address the problem and did so. Plaintiff has not shown discrimination existed from any raid on his accounts.

■ Plaintiff's next contention is that in June, 1984 he sent a letter to to Mel Pierce of the company's EEOC office complaining about racial discrimination against him. Within one week he was placed in counseling. Plaintiff does not inform the court the date of his letter to Pierce. Defendant's evidence shows that plaintiff was told on June 13, 1984 that he must attend counseling sessions because of his poor work performance. Plaintiff then sent a letter dated June 15, 1984 to Walter Chaffin of the Company's EEOC office, first raising his complaint of racial discrimination. The EEOC Charging Party Retaliation Questionnaire prepared by plaintiff shows that he first made his complaint of retaliation to the company on June 15, 1984. Plaintiff's affidavit that he was sent to counseling a week after he notified the EEOC office of retaliation is incorrect as far as the evidence before the court demonstrates.

■ One of the essential elements asserted by plaintiff to establish a prima facie case of race discrimination is that the plaintiff was qualified for the job and performing satisfactorily. Defendant asserts that plaintiff was performing poorly as seen by his failure to obtain his quotas of sales. But plaintiff claims that during his employment he was responsible for five accounts, only three having prior history with the company. He advised the Company that there would be at least a 12 month turn around time before significant orders could be expected. By late summer of 1984 the turn around predicted by plaintiff had occurred and significant business was being generated. Plaintiff attaches exhibits or orders placed by Jones and Laughlin Steel Corporation during his employment. He alleges that it shows gross sales of

$127,812.60. Defendant had chosen to completely ignore these substantial bookings to plaintiff's accounts at the very point in time when plaintiff predicted sales would begin. In paragraph 3 of his affidavit plaintiff points out that prior to plaintiff's assignment to the steel company accounts, the Company was not highly thought of by these customers. Plaintiff alleges that praise from a customer is most important evidence of his competency.

Despite plaintiff's affidavit and argument the Court finds that plaintiff has not raised a genuine issue of fact concerning his sales competency. The defendant has countered with an affidavit that shows that the $127,812.60 gross sales were not due solely to plaintiff's efforts. He had substantial assistance in making these sales. The exhibits show that after plaintiff's personal negotiations with the Company salesman who worked with him on these sales, plaintiff only received credit for $53,954.82 and the sales occurred during a two month period. Plaintiff failed to meet his monthly quota. Furthermore, plaintiff received credit for the $53,954.82, due him for sales. Even though a few customers thought highly of plaintiff, the facts show that he was not performing up to Company standards. The conclusion is that plaintiff cannot establish a prima facie case because he cannot show that he was performing satisfactorily.

The United States Supreme Court set forth the standard for summary judgment in *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court stated: "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The mov-

**568**

ing party is "entitled to judgment as as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. " '[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)....' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)." 106 S.Ct. at 2553. Plaintiff has submitted evidence attempting to show he has performed his job satisfactorily. In the usual situation, a genuine issue of material fact would be present precluding summary judgment. In this case the defendant has shown that plaintiff's facts are not as plaintiff alleges and that plaintiff has not sufficiently established the existence of an issue of fact. As the Supreme Court concluded in *Celotex Corporation v. Catrett,* 106 S.Ct. at 2555:

> "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

Plaintiff offers statistical evidence to show that the defendant discriminates according to race. He argues that defendant has offices in Beachwood, Ohio, an area of Cuyahoga County that has a substantial black population, yet defendant has hired few blacks for its sales force. Plaintiff, using statistics supplied by defendant through interrogatories, states that defendant has 55 sales persons. Only three were black. It is submitted that a black sales force of 5% in this area demonstrates racial discrimination. Taken alone, this statistical evidence can establish plaintiff's prima facie case.

■ Defendant points out that it listed only the individuals in the job classifications relevant to the case. Only 29 sales personnel was listed not 55. This amounts to over 10%.

Plaintiff's statistical proof is not sufficient to show a prima facie case or that there is an issue of act concerning race discrimination. He is comparing the general population in the area to defendants sales force rather than the appropriate qualified work force. Comparison to the general black population of Beachwood has little probative value in this case. The entire black population of Beachwood is not qualified to work as a sales representative for defendant. *EEOC v. United Virginia Bank/Seaboard National,* 555 F.2d 403, 406 n. 7 (4th Cir.1977). *See Alexander v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers, AFL–CIO,* 565 F.2d 1364 (6th Cir. 1977).

■ In Count Two of the second amended complaint, the plaintiff alleges that on September 5, 1984 defendant unlawfully retaliated against him for filing his initial charge of discrimination and further discriminated against him because of his race by giving him a verbal warning stage for poor performance and by threatening him with termination.

The evidence before the Court shows that plaintiff was placed on verbal warning because of inappropriate conduct at a counseling session. He concedes that he walked out of the meeting and agrees that the meeting was heated. He also concedes that he was not meeting his monthly quotas. This was the reason for the counseling meetings. Other individuals with poor sales records were similarly counseled. He has not shown that the company was retaliating against him for filing an EEOC Charge by giving him a verbal warning stage for poor performance and insubordination.

■ Plaintiff alleges in Count Three that the defendant retaliated against him for filing his charge of retaliation on September 5, 1984 and further discriminated against him because of his race by terminating his employment. Over the last five years defendant has forced the resignation of other black sales representatives. Plain-

tiff was the only black sales representative to be terminated.

Plaintiff testified in his deposition that he knows of one black sales representative whose resignation was forced by defendant. However, he also testified that he does not personally know the circumstances of that persons leaving the Company. He heard about the black sales representative's situation from statements from people in the office. He never spoke to any other black persons who where forced to resign. Clearly, the evidence before the Court is insufficient to allow this claim to remain as an issue.

Similarly, plaintiff claims that he was terminated because of his filing of an EEOC Charge on September 5, 1984. The evidence demonstrates that plaintiff was terminated for poor performance.

The Court finds that defendant has shown that plaintiff cannot establish a prima facie case of race discrimination. Plaintiff has not shown that an issue of fact exists as to whether he has been treated differently than a similarly situated white person or that he was performing his job satisfactorily. Even if plaintiff has established an issue of fact as to a prima facie case defendant has shown a legitimate business reason for plaintiff's counseling sessions and termination, i.e., poor work performance. Plaintiff has not shown that defendant's conduct was a pretext for racial discrimination. Also plaintiff has not shown any discrimination as to his claims that he was required to complete additional reports or that his accounts were raided.

Accordingly, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.