986 F.2d 1422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra K. SAMSON-SMITH, Plaintiff-Appellant,
v.
Donald B. RICE, Secretary Department of the Air Force,
Defendant-Appellee.
 No. 92-3055.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1993.
 
 Before DAVID A. NELSON and SILER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Sandra K. Samson-Smith, appeals the summary judgment for defendant-appellee, Donald B. Rice, Secretary of the Department of the Air Force, dismissing her complaint. The complaint charged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for racial, sexual, and retaliatory employment discrimination. During her work as a civilian with the Department at Wright-Patterson Air Force Base in Ohio, plaintiff filed numerous formal discrimination complaints against the Department and various supervisors. The complaints relevant to this appeal include: (1) a November, 1984, complaint, which consolidated informal complaints involving four allegedly discriminatory acts occurring on August 13, 1984 (two acts), September 6, 1984, October 9, 1984, and October 11, 1984; (2) a May, 1985, complaint which included charges of allegedly continuous acts of discrimination occurring from August 1, 1984, through May 8, 1985; and (3) a September 12, 1985, complaint involving one alleged act of discrimination occurring on May 14, 1985. For reasons set out herein, the judgment will be AFFIRMED.
 
 FACTS
 
 2
 Plaintiff is a black female who was employed by the Department from September 26, 1980, until August 9, 1985. Plaintiff served as: (1) a GS-9 Contract Negotiator, from September 26, 1980, to October 24, 1981; (2) a GS-11 Contract Negotiator, from October 25, 1981, to January 30, 1982; (3) a GS-11 Contract Administrator, from January 31, 1982, to December 31, 1983; and (4) a Collateral Duty Equal Employment Opportunity Commission ("EEOC") counselor, beginning in September, 1982. On January 4, 1984, plaintiff took a down-grade in position to begin working full-time as a GS-9 EEOC Specialist under Daisy Allen, a black female and chief of the EEOC. Prior to her move, Allen had supervised plaintiff's work as an EEOC collateral duty counselor. Despite Allen's efforts to hire her as a GS-11 EEOC Specialist, plaintiff was eligible only for a GS-9 position. However, Allen placed plaintiff on a GS-11 work plan based on her previous "highly commendable" performance. At the time of plaintiff's move, Lynn Ranney was the other GS-11 EEOC Specialist.
 
 
 3
 In March, 1984, Diane Carrol Wakeham, a white female, was hired as the new EEOC chief, replacing Allen. Plaintiff did not agree with her selection and expressed her discontent to Wakeham. On August 15, 1984, Wakeham issued a proposed one-day suspension against plaintiff after discovering that, as a Contract Administrator, plaintiff had extended a contract to a debarred contractor on five different occasions. Plaintiff admittedly knew that Department policy proscribed the award of contract extensions to debarred contractors, but denied knowing that she was responsible for consulting the list of debarred contractor as a precaution against such extensions. At the time plaintiff's disciplinary action was pending, she had already filed a discrimination complaint with the EEOC, alleging that she had not been evaluated at an appropriate time and did not receive step increases in a timely manner. As Wakeham was aware of this action, plaintiff then filed a racial, sexual, and retaliatory employment discrimination complaint.
 
 
 4
 On August 15, 1984, Wakeham issued appraisals for Ranney and plaintiff. Wakeham gave plaintiff a "presumptive" rating of "fully successful" but altered her work plan to reflect her GS-9 status. In her deposition, Wakeham testified that plaintiff had problems defining issues in her assigned cases, was slow in her case preparation, failed to follow directions, and did not work well with the collateral duty counselors. Wakeham explained that she gave plaintiff the "presumptive" rating because plaintiff had been under her supervision for only five months and had completed only one case during that time. In August, 1984, after plaintiff requested a position upgrade, she was informed that she could not be upgraded to a GS-11 until she had spent one year at the GS-9 level developing specialized skills. As for Ranney, Wakeham evaluated her performance on an individual basis and gave her a "superior" rating. In November, 1984, Ranney, who had served as an EEOC Specialist for over one year, was promoted to a GS-12.
 
 
 5
 On October 9-11, 1984, Wakeham asked the plaintiff to redefine the issues in two pending cases. When plaintiff refused to comply, Wakeham documented her personnel file to reflect the refusals. On October 11, 1984, plaintiff received an oral reprimand for the contract extensions incident, and this also was documented in her personnel file. Likewise, the two male contracting officials involved in the contract extensions incident were reprimanded orally. As a result of the reprimand, plaintiff filed a second racial and sexual employment discrimination complaint against Wakeham.
 
 
 6
 In late October, plaintiff received several letters of counseling from Wakeham regarding her job performance. In addition, plaintiff's personnel file was documented with memos concerning her deficient performances. Wakeham testified that during her supervision of plaintiff, she had continual problems with plaintiff's attitude and behavior on the job as well as the performance of her duties. Wakeham and plaintiff admitted that there were several "heated discussions" between the two regarding their positions and responsibilities. On November 19, 1984, plaintiff filed a formal complaint with the EEOC based upon the prior informal complaints. On December 13, 1984, Wakeham issued a written reprimand for insubordination. In January, 1985, plaintiff filed another complaint with the EEOC for the mishandling of her complaints. On February 4, 1985, Wakeham issued plaintiff an unacceptable performance rating and placed her on 90-day probation. In May, 1985, Wakeham gave plaintiff an unacceptable performance rating, and proposed that plaintiff be removed from her position.
 
 
 7
 Plaintiff filed her final racial, sexual, and retaliatory employment discrimination complaint with the EEOC on May 15, 1985. Plaintiff was hospitalized for stress two days later, and retired on a stress-related disability on August 9, 1985.
 
 ANALYSIS
 I.
 
 8
 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). This court must review a grant of summary judgment de novo, using the same test as used by the district court. Brooks v. American Broadcasting Co., 932 F.2d 495, 500 (6th Cir.1991).
 
 II.
 
 9
 To establish a racial and/or sexual employment discrimination claim, the plaintiff must prove by a preponderance of the evidence that: (1) she was a member of a protected group; (2) she and a similarly situated person not of her protected group received dissimilar treatment; and (3) sufficient evidence exists to show a causal connection between the plaintiff's race and/or sex and the discriminatory acts. Cooper v. City of North Olmstead, 795 F.2d 1265, 1270 (6th Cir.1986); Potter v. Goodwill Indus. 518 F.2d 864 (6th Cir.1975). If the plaintiff meets the initial burden of proof, the employer must then articulate some legitimate, non-discriminatory reason for the challenged action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To prevail against an employer who has articulated a legitimate, non-discriminatory reason, the plaintiff must then show by a preponderance of the evidence that the stated reasons were pretextual in nature. Id.
 
 
 10
 Plaintiff alleged that Wakeham's dissimilar treatment of Ranney, a white female, constituted racial discrimination. To the contrary, however, Wakeham's dissimilar treatment reflected the respective employees' job experience and performance. At the time of Wakeham's first employee evaluations, plaintiff had been working in the EEOC office for a relatively short time. Ranney, on the other hand, had been working as an EEOC Specialist for over one year. Thus, the two employees were not similarly situated.
 
 
 11
 Even assuming that plaintiff and Ranney were similarly situated, plaintiff failed to show that Wakeham's stated reasons for the disciplinary actions were pretextual. Wakeham testified that she evaluated each employee on an individual basis with reference to past performance appraisals and their performances during her time as EEOC chief. Ranney was given a superior rating based on her previous "high mark" evaluations and timely and consistent case work. Plaintiff was given a "fully successful" rating as a result of Wakeham's unfamiliarity with her work. Wakeham explained that it was difficult to assess plaintiff's capabilities as she had only turned in one case in five months. Wakeham stated that plaintiff's attitude and performance deteriorated after she orally reprimanded plaintiff for the contract extension violations. Wakeham cited several instances in which plaintiff had refused to follow instructions, ignored suspensions, verbally abused Wakeham, and, on one occasion, accused Wakeham of conspiring to persecute her. As a result, plaintiff's personnel file was documented several times and she was placed on probation.
 
 
 12
 In addition, plaintiff alleged that the change made in her work plan to reflect her GS-9 level and the denial of her upgrade to a GS-11 were discriminatory actions motivated by race. However, plaintiff did not have the requisite experience to qualify for an upgrade and the change in her work plan had no effect on future promotions. On the other hand, Ranney had served the requisite one year at the GS-11 level and was otherwise qualified for a promotion. Thus, the dissimilar treatment of Ranney and plaintiff was based on legitimate and non-discriminatory employment actions. Plaintiff has not demonstrated the existence of unlawful employment discrimination.
 
 
 13
 Furthermore, plaintiff's allegations of sexual discrimination based on the issuance of the oral admonishment for the contract extensions violations is meritless. Two male co-workers received the same oral admonishment, thereby negating any inference of discrimination. Accordingly, plaintiff failed to establish sexual employment discrimination.
 
 III.
 
 14
 To establish a prima facie case of retaliatory discrimination, the plaintiff must show by a preponderance of the evidence that: (1) she engaged in an activity protected by Title VII of the Civil Rights Act of 1964; (2) the exercise of her civil rights was known by defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Christopher v. Stouder Mem. Hosp., 936 F.2d 870, 877 (6th Cir.), cert. denied, 112 S.Ct. 658 (1991); see Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.), cert. denied, 111 S.Ct. 516 (1990).
 
 
 15
 Plaintiff alleged that she was subject to numerous adverse employment actions as a result of her August, 1984 discrimination complaint. To establish a prima facie case of retaliatory discrimination, plaintiff showed: (1) the filing of the discrimination complaints was protected activity under Title VII; (2) Wakeham was aware of plaintiff's complaints; and (3) Wakeham took several adverse or disciplinary employment actions against plaintiff. However, plaintiff failed to establish a causal connection between her protected activity and Wakeham's employment actions. Wakeham explained that, after the oral reprimand, plaintiff's attitude and job performance began to deteriorate. Although many of the problems between Wakeham and plaintiff began after the reprimand, Wakeham offered legitimate explanations for each of the disciplinary actions, including the presumptive evaluation and promotion denial. Thus, plaintiff has not established retaliatory discrimination.
 
 
 16
 The district court found plaintiff had not established a prima facie case on any of her allegations of discrimination, but assuming arguendo that she had, defendant articulated a legitimate, non-discriminatory reason for the acts and plaintiff did not show it was pretextual. We adopt those findings.
 
 CONCLUSION
 
 17
 For the foregoing reasons, the grant of summary judgment by Magistrate Judge Michael R. Merz on behalf of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior Judge for the Western District of Michigan, sitting by designation