Glenna DOKES, Plaintiff–Appellant,

v.

JEFFERSON COUNTY OHIO; Jefferson County Board of Commissioners; Jefferson County Dep't of Human Services; and Nicholas S. Balakos, Director of Human Services, Defendants–Appellees.

No. 01–3971.

United States Court of Appeals, Sixth Circuit.

March 20, 2003.

Before SILER and ROGERS, Circuit Judges; and GWIN, District Judge.*

OPINION

ROGERS, Circuit Judge.

Appellant Glenna Dokes filed suit in the United States District Court for the Southern District of Ohio, Eastern Division alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Ohio Revised Code Chapter 4112, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 and various state tort laws. These claims alleged racial discrimination and retaliation against her for her protected First Amendment rights and protected activities under Title VII. She appeals the district court's grant of summary judgment in favor of defendants. For the following reasons, we AFFIRM IN PART, REVERSE IN PART and REMAND.

## I. BACKGROUND

Glenna Dokes, an African–American, worked for the Jefferson County Department of Human Services ("DHS") for 19 years prior to the trial in this case. In 1996, Jeanne Parrish, Director of DHS, recommended Dokes for promotion. Before the decision was made about the promotion, the Jefferson County Board of Commissioners decided to remove Parrish from her office. Dokes and others in the community intensely opposed this removal by signing petitions, attending meetings and otherwise publicly supporting Parrish.

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

During this time, Dokes had heard that the promotion was not going to be given, but later heard that a white employee was going to get the job. Dokes complained to the NAACP believing that she was not going to get the promotion because of her race. The NAACP investigated and met with one of the Commissioners. Ultimately, Dokes received the promotion. Just as Dokes began work at her new position, the Parrish debate ended and Mr. Balakos was appointed as the new Director, becoming Dokes's supervisor.

Dokes claims that Balakos treated her less favorably than non-Parrish supporters and treated her poorly on account of her engaging in protected activities under Title VII. One such instance of unfair treatment, according to Dokes, was requiring Dokes to take an examination after her promotion. Because she was recently promoted, if she failed then she would lose the promotion. Dokes sought the help of the NAACP. Based on Balakos's statement that he made a white supervisor take the test as well, the NAACP did not pursue the issue further. Dokes took the test and passed it.

Dokes recounts several other instances of unequal treatment by Balakos. He screamed at her on one occasion, but allegedly did not scream at others. Balakos allegedly did not reprimand a white employee who wore a sweatshirt of a school having racial problems and who placed white pieces of paper on the floor and told Dokes that she could not cross them. Balakos also allegedly intervened on behalf of a white employee when Dokes tried to discipline him.

There were other situations that Dokes claims were discriminatory. Her supervisor, a white employee promoted by Balakos, Ms. Roush, gave Dokes failing grades on three different evaluations. Until this time, she had received good scores. Also, Balakos did not have Ms. Roush reevaluate Dokes even though he allegedly had a white employee reevaluated, resulting in much higher scores.

In October, 1997, following a predisciplinary hearing and on the recommendation of Balakos, Dokes was removed because she was accused of committing welfare fraud. Two months before her termination, Charles Griffith, a fraud investigator with DHS, received an anonymous phone call that Dokes was committing welfare fraud. Several years prior to this, Dokes was granted custody of her grandson. Her grandson's father, her son, was in the Navy and was sending Dokes money, allegedly to pay for legal expenses Dokes had incurred. The money was a Navy dependent allotment and was supposed to be included as part of Dokes's income in determining the Aid to Families with Dependent Children that she was receiving through DHS. Griffith found that the allotment was not included as income and reported this to Balakos. Dokes contended that she did not know the money was a dependent allotment. A majority of Commissioners voted to remove her in October, 1997. Dokes filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission in November, 1997. Then, in December, 1997, criminal charges were brought against her for forty-one counts of welfare fraud. Dokes claims that the criminal charges were initiated to justify the Commissioners' decision to terminate her and that they did not have enough information to believe she committed fraud. At the trial, the evidence did not adequately show that Dokes committed fraud and she was acquitted.

After she was acquitted, the Commissioners voted to reinstate or rehire Dokes to her former position with back pay. Ba-

lakos refused to reinstate her, based on advice from counsel that he did not have the legal authority to do so. The Commissioners temporarily placed Dokes in a liaison officer position until the parties could come to a solution about her reinstatement. As liaison, Dokes received the same salary as in her former position. Dokes alleges that Balakos would only rehire her if she signed an agreement stating that she would pay back all of the money she had been accused of fraudulently receiving. She found this insulting and refused. Dokes filed this suit before an agreement was reached because the statute of limitations deadline was near. The Commissioners eliminated her position within two weeks after she filed suit. Dokes argues that this was retaliation for filing suit, in violation of Title VII. Defendants contend that the position was not needed and was a drain on resources.

Dokes named Jefferson County Ohio, Jefferson County Board of Commissioners, DHS and Nicholas S. Balakos, Director of Human Services ("defendants") as defendants in this suit. The district court determined that Jefferson County and DHS were not proper parties for Dokes's federal claims. Dokes did not appeal this determination. The court granted the remaining defendants summary judgment on the federal law claims. The court declined to exercise jurisdiction over her state law claims and dismissed them without prejudice. Dokes timely appealed summary judgment as to her federal claims and the dismissal of her state law claims. However, in her briefs to this Court, she did not address the state law claims. Therefore, we will only address her federal claims. We have jurisdiction pursuant to 28 U.S.C. § 1291.

This Court reviews a district court's grant of summary judgment *de novo*. *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999). The evidence should be viewed in the light most favorable to the nonmoving party and summary judgment should only be granted where there is no genuine issue of material fact. *Id.* The district court did not err by granting summary judgment on Dokes's § 1983, § 1981 and Title VII race discrimination claims. However, we reverse and remand the district court on Dokes's Title VII retaliation claim.

## II. ANALYSIS

### A. First Amendment and race discrimination claims

■ Dokes seeks relief pursuant to § 1983 for First Amendment violations. She claims that she was retaliated against by defendants in response to participating in protected activities. The district court found that Dokes's support of Parrish was the only protected activity for this claim. The court limited its analysis to Dokes's termination after the fraud investigation and the abolishment of the liaison position because these were the only alleged adverse employment actions that would "deter a person of ordinary firmness" from engaging in the protected activity. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998). The court held that there was no causal connection between these adverse actions and the protected conduct because Dokes did not show a temporal proximity between them nor did she present any additional evidence of retaliation resulting from her support of Parrish. We affirm the district court with respect to Dokes's First Amendment claim, for the reasons given in the district court's opinion.

■ Dokes claims that she was treated unequally because of her race in violation of Title VII. Dokes has not shown that she was treated differently than similarly situated non-minority employees as is re-

quired to prove a prima facie case of disparate treatment race discrimination under Title VII. *Perry v. McGinnis,* 209 F.3d 597, 601(6th Cir.2000). We affirm the district court on this claim, again for the reasons given by the district court.

Dokes claimed a violation of equal protection under § 1983 and race discrimination in violation of § 1981. The analysis for an equal protection claim under § 1983 and the analysis for employment discrimination under § 1981 are the same as for a Title VII race discrimination claim. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 794 (6th Cir.2000); *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 573 n. 5 (6th Cir.2000). Because Dokes's Title VII race discrimination claim fails, we affirm the summary judgment on her equal protection and § 1981 claims as well.

### B. Retaliation in violation of Title VII

Dokes alleged that defendants retaliated against her in response to her participation in activities protected under Title VII.

To make a prima facie case of Title VII retaliation, a plaintiff must prove: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Once the plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to articulate some legiti-

mate, nondiscriminatory reason for its actions.

*Ford v. GMC,* 305 F.3d 545, 552–53 (6th Cir.2002) (citations omitted).

■ The district court considered Dokes's filing of a complaint with the OCRC and filing of this lawsuit to be protected conduct under Title VII.[1] With respect to the OCRC complaint, Dokes asserted that she filed the complaint after her termination and that defendants retaliated against her by filing criminal charges and by refusing to reinstate her after her acquittal. She also contended that ten days after she filed the current lawsuit, defendants retaliated against her by abolishing her liaison position. The district court found that the first two elements of a prima facie case were met because defendants conceded that filing a complaint with the OCRC and filing this lawsuit were protected activities and that they were aware that Dokes engaged in these activities. *Ford,* 305 F.3d at 552–53. The district court also found that refusing to reinstate Dokes and abolishing her liaison position were adverse employment actions satisfying the third element. *Id.* However, the court held that Dokes failed to show a causal connection between the filing of the OCRC complaint and the criminal charges. The court acknowledged defendants' concession that causation could be inferred because of the short period of time between Dokes's OCRC claim and her indictment for fraud. *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Nonethe-

---

1. The district court should have also considered two of Dokes's complaints to the NAACP as protected activities under Title VII. *See Clement v. Madigan,* 820 F.Supp. 1039, 1049 (W.D.Mich.1992). However, even if the district court did take these complaints into consideration, Dokes still could not make a prima facie showing because there was no evidence that defendants retaliated against her because

of these complaints. Her first NAACP complaint was based on the delay in her promotion that she ultimately received. She filed another NAACP complaint after Balakos required her to take the civil service test. She took the test and passed it. Therefore, Dokes suffered no adverse employment actions due to filing these complaints. *Ford,* 305 F.3d at 552–53.

less, as the district court found, defendants turned the evidence over to the prosecutor's office several weeks before Dokes filed her claim, so the indictment could not have been retaliatory.

 As for failing to reinstate her, the district court found the causal connection to be weak because there was a nine-month span between the filing of the OCRC complaint and her acquittal. The district court went on to find that even if a causal connection existed, defendants articulated a legitimate, non-retaliatory reason for failing to reinstate her. *Ford,* 305 F.3d at 552–53. That reason was Balakos's belief, based on advice from counsel, that he did not have the authority to reinstate her. The district court held that Balakos's reliance on counsel's advice was reasonable and that Dokes did not show that Balakos did have authority to reinstate her nor did she otherwise show pretext. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

We disagree with the district court's analysis on this point. Although the causal connection was "weak," the district court did not find that none existed. One month after Dokes filed the OCRC complaint, Dokes was charged with forty-one counts of welfare fraud. The district court found that this could not have been retaliatory in nature because defendants gave the evidence to the prosecutor's office before Dokes filed the OCRC complaint. However, this was not before Dokes had filed NAACP complaints about her promotion and the civil service test. *See* footnote 1. Also, during the remainder of the nine-month span between Dokes's filing the OCRC complaint and her acquittal, there were no other actions that defendants might have taken because Dokes had been terminated and was going to trial. Defendants' failure to reinstate after Dokes's acquittal could be seen as retaliation for

the OCRC complaint. Therefore, a reasonable fact finder could find that each element of the prima facie case was met with respect to defendants' failure to reinstate Dokes. *Ford,* 305 F.3d at 552–53.

The burden then shifts to defendants to articulate a legitimate, non-retaliatory reason.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citations and footnotes omitted); *see also St. Mary's Honor*

*Ctr., et al. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The district court found that defendants had met their burden of production by articulating a non-retaliatory reason for failing to reinstate Dokes. Defendants provided evidence that Balakos did not reinstate Dokes with back pay, despite the Commissioners' desire that she be reinstated with back pay, because of legal advice received by Balakos that he did not have the authority to reinstate her.

Assuming that this satisfied the defendants' burden of production. Dokes still must be offered a "full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. The only evidence to support defendants' nonretaliatory reason for failing to reinstate Dokes was Balakos's statements that he did not have the legal authority based on advice from counsel, consultation with the prosecutor's office, and advice from the Department of Administrative Services. Balakos merely stated that the Ohio Revised Code prohibited him from reinstating Dokes with back pay. It is difficult to conclude from the record that Balakos could not have at least reinstated Dokes, apart from whether back pay could have been awarded for the period between her dismissal and her being hired as a liaison. The letter from counsel that Balakos relied upon was included as an exhibit to Dokes's memorandum in opposition to summary judgment, but was ordered struck from the record at the instance of defendants. It is true that the Commissioners did direct that Dokes be reinstated with back pay, but there is nothing in the record that shows that Balakos could not have partially complied with the directive by reinstating her without resolving the back pay

issue.[2] Examining the record before us, we cannot say that there is not at least a triable factual issue regarding whether Balakos's refusal to reinstate Dokes was based on retaliation for activity protected by Title VII. Summary judgment was therefore not appropriate on this issue.

■ With respect to Dokes's claim of retaliation based on abolishing her liaison position shortly after she filed this lawsuit, the district court noted that it was a "close call" whether defendants were entitled to summary judgment. The district court correctly found that the first three elements, protected activity, knowledge by defendants, and adverse employment action, were met. Defendants conceded that a causal connection could be inferred since the position was abolished shortly after Dokes filed this lawsuit, establishing a prima facie case of retaliation. *Clark County Sch. Dist.,* 532 U.S. at 273, 121 S.Ct. 1508. However, the district court correctly concluded that defendants articulated a legitimate, non-retaliatory reason for abolishing the position: a liaison was not needed. This legitimate, non-retaliatory reason was supported by evidence that the parties had agreed that the position was temporary, that budget constraints led to the decision to eliminate unnecessary positions, the liaison position being one, and that a liaison was not needed. Finally, the liaison position was obviously created to employ Dokes until negotiations regarding reinstatement were completed. Once she filed suit the negotiations stopped. If an employer voluntarily pays a terminated employee pending negotiations to settle an underlying Title VII dispute, it is not Title VII retaliation to cease the voluntary payments when the settlement negotiations break down. To hold otherwise would de-

---

2. Dokes also pointed out that settlement negotiations contemplated a possible reinstatement despite the asserted legal prohibition.

Balakos never answered a question on this point posed by Dokes's counsel at his deposition, asserting the attorney-client privilege.

ter negotiated settlements. The district court properly granted summary judgment on this aspect of Dokes's claim. Of course, if Dokes is ultimately successful on her claim that Balakos's failure to reinstate her was retaliation in violation of Title VII, the later decision to abolish her interim sinecure may affect the scope of relief.

### III. CONCLUSION

We affirm the district court on the First Amendment and race discrimination claims. We reverse and remand on the Title VII retaliation claim.

GWIN, District Judge.

While I concur with the decision to affirm in part, reverse in part, and remand, I do so for different reasons.

### I. Retaliation Based on the EEOC Discrimination Charge

Dokes argues that Balakos and the Commissioners retaliated against her by prosecuting her after she filed an EEOC and OCRC complaint against them. The majority affirmed the district court's decision to grant summary judgment for the defendants on this claim. I agree, but I do so for different reasons. Dokes also argues that Balakos refused to reinstate her in retaliation for filing the OCRC complaint. The majority holds that the district court erred in granting summary judgment on Dokes' claim that the defendants retaliated against her by refusing to reinstate her after her acquittal. I disagree.

The majority concludes that Dokes' prosecution could not have been retaliatory because the defendants turned over evidence to the prosecutor's office several weeks before Dokes filed her claim. While I agree the district court did not err in dismissing the claim, I do so for different reasons.

I find that turning over evidence to a prosecutor is not an adverse employment action. The majority has not cited any authority to the contrary. First, the prosecutor and grand jury, not the defendants, brought charges against Dokes. Second, Ohio law obligated the defendants to report this information to the local authorities. *See* Ohio Rev.Code Ann. § 2921.22(A) (No person knowing that a felony has been committed shall fail to report such information to the law enforcement authorities). Therefore, I find that Dokes' claim fails to make a *prima facie* showing. The defendants' reporting of suspicious activity to a prosecutor, who then makes an independent decision to go forward with a criminal prosecution, is not an adverse employment action.

The majority also held that the district court erred with respect to Dokes' claim that the defendants retaliated against her by failing to reinstate her after her acquittal. I disagree. The causal connection between Dokes' OCRC complaint and the defendants' refusal to reinstate her is weak. This Court previously held, "the mere fact [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference [sic] of retaliation." *Cooper v. North Olmsted,* 795 F.2d 1265, 1276 (6th Cir.1986). Nine months elapsed between the filing of the OCRC complaint and the defendants' failure to reinstate Dokes. The majority acknowledges that the causal connection is weak, but finds enough to satisfy the *prima facie* requirement. Given the Sixth Circuit's authority in *Cooper* and the lack of other evidence showing the discharge was in retaliation for protected activity, I find the plaintiff fails to support the causation requirement. Finding no other grounds to support causation, I conclude that Dokes failed to meet the *prima facie*

case on this claim. I would affirm the district court on this issue.

## II. Retaliation Based on Filing this Lawsuit

Dokes brought a third Title VII claim against Balakos and the Commissioners alleging that they retaliated against her by terminating her position after she filed this lawsuit. The district court granted summary judgment for the defendants on this retaliation claim finding that the defendants established a legitimate and nondiscriminatory reason for terminating Dokes' temporary position. The majority affirmed the decision of the district court. I disagree.

Dokes filed this lawsuit within days of a statute of limitations deadline. When she filed this lawsuit, Dokes and DHS were negotiating her rehiring terms. Although Dokes had been put in a liaison position, the parties negotiated over returning her to a position equivalent to her former job. Commissioner Crabbe justified firing Dokes by claiming that once he received notice of the lawsuit he understood this to mean the end of the negotiations. The Commissioners say they voted to eliminate the temporary position Dokes held because there was nothing left to negotiate. However, nothing in the record indicates that Dokes had finished negotiating with DHS. Also, the record does not indicate that the Commissioners asked Dokes or her legal counsel whether they were finished negotiating. If Dokes allowed the statute of limitations to run, she would lose her claim forever. Filing this lawsuit preserved her claim, but did not necessarily end negotiations. *See, Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000) ("A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action 'by showing that the proffered reason ... was insufficient to warrant the challenged conduct.' ")

In addition to the insufficiency of the defendants' justification, we can infer a causal connection here because the abolishment of the liaison position occurred within a few days of Dokes filing this lawsuit. *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Given the close proximity in time between the adverse employment action and Dokes' protected activity, we can only view suspiciously the Commissioners' decision to abolish Dokes' position To establish a legitimate non-retaliatory reason for an adverse employment action, an employer, "must clearly set forth ... [reasons] legally sufficient to justify a judgment for the defendant." *Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 254–256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendants' explanation is not worthy of belief. Since little evidence exists to support the defendants' stated reason for stopping efforts to find a position for Dokes, I would find that the defendants did not meet their burden of showing a legitimate non-retaliatory reason for abolishing Dokes' position. Therefore, I would reverse the decision of the district court on this issue and remand for further proceedings.